IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GNC FRANCHISING, INC. )<br>    Plaintiff, ) | Civil Action No. 05-0270 |
| ) | Judge Gary L. Lancaster |
|     vs. ) | Magistrate Judge Lisa P. Lenihan |
| ) | |
| TIM O'BRIEN, DOROTHY O'BRIEN, )<br>BISCAYNE NUTRITIONAL SERVICES, )<br>INC., )<br>    Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. Recommendation

It is respectfully recommended that the Motion for Summary Judgment filed by Plaintiff GNC Franchising, Inc. ("GNC") as to the remaining counter-claims raised by Defendants be granted in part and denied in part, as more fully set forth below.

### II. Report

This case involves a franchise relationship between GNC, as franchisor, and Defendants, as franchisee. In counter-claim to Plaintiff's action for various contract-default related damages, and as discussed more fully in this Court's previous Report and Recommendation on Plaintiff's Motion to Dismiss, Defendants largely allege that GNC manipulates its franchise system unfairly and/or unlawfully and to the benefit of company-owned stores in direct competition with the franchisees. Similar claims have been before this Court in other actions, including a class action

which, by the terms of its October 26, 2001 settlement required GNC to undertake good faith, reasonable measures to redress identified inequities in its relationships with, and conduct affecting, franchisees.

For reasons set forth below, this Report recommends that Plaintiff's Motion for Summary Judgment on Defendants' remaining cross-claims be granted as to claims of fraudulent inducement and/or negligent misrepresentation, as Defendants have failed to evidence a material question of reliance on any fraudulent/negligent misrepresentation or omission. It further recommends that the Motion be granted as to claims of breach of a duty of good faith and breach of contract accruing before January 9, 2002, as such claims are barred by release language executed by Defendants on that date. Finally, it recommends that the Motion be denied as to claims of breach of a duty of good faith and breach of contract accruing thereafter.

### III.  Statement of Facts and Procedural History

GNC both (a) operates regional mall-based company stores marketing its own and third-party brand health/nutritional products, and (b) franchises neighborhood strip-mall-based stores. It distributes its own product, as well as third-party products, to its franchisees. As noted in the previous Report and Recommendation, charges of unlawful practices leveled against GNC have included: (a) unfairly competing with franchisees by, *e.g.*, selling monthly "special" products to the public at a cost lower than that charged to the franchisees; (b) imposing unfair product purchase terms/restrictions on franchisees; and even (c) interfering with third-party vendor's direct sales to franchisees.

These particular Defendants operated three GNC franchise stores in Georgia pursuant to franchise agreements with Plaintiff. The franchise agreement provisions require certain payments to GNC, including those for (a) royalty fees based upon a percentage of gross sales and (b) national advertising, accounting and financial services. In addition, Defendants purchased product directly from GNC under the terms of a Product Sales Agreement. As a result of alleged payment defaults, GNC terminated Defendants' franchises in late 2004 and, on March 1, 2005, GNC filed a Complaint against Defendants alleging breach of contract, tortious interference with business relations, and other claims. A Consent Order dated April 21, 2005 substantially resolved all but Plaintiff's claim for contractual amounts due.

Defendants answered on May 12, 2005, and filed an amended Answer and Counterclaim, with this Court's approval, on October 25, 2005. Several of those counterclaims were dismissed, but - largely on the basis of the Court's research and analysis - some counterclaims survived. Those remaining are:

A) That Plaintiff obtained both (1) Defendants' franchise(s) and (2) their expansion of one such franchise to include a "Smoothie Bar" by fraudulent inducement and/or negligent misrepresentation. More specifically, Defendants allege that the Plaintiff made misrepresentations and/or omissions in its UFOC regarding the disposition of litigation with other franchisees (the "Savins"). They also allege that GNC made inaccurate representations to them regarding the profitability of expanding a franchise store to add a Smoothie Bar, thus inducing Defendants to rent additional space and incur additional expense. See Defendants' Counterclaim at ¶¶ 100-108.

B) That Plaintiff breached an implied covenant of good faith and fair dealing.

C) That Plaintiff breached its franchise agreement(s) with the Defendants.

On November 29, 2006, Plaintiff moved for summary judgment on these remaining cross-claims and filed its Concise Statement of Material Facts in accordance with Local Rule 56. On January 11, 2007, Defendants filed a rather surprisingly brief Memorandum in Opposition, largely reiterating questions of law decided by this Court on the Motion to Dismiss, erroneously referring to their own litigation as though it were another's, and failing to respond to the Motion for Summary Judgment with a *single* citation to the record.  And although Plaintiff's January 22 reply points out Defendants' failures to either (a) respond to the Motion for Summary Judgment with citations to evidence or (b) file a Responsive Concise Statement of Facts in accordance with the Local Rules, Defendants have elected to place nothing further before this Court.[1]

## IV.  Summary Judgment Standard

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

---

[1] The Report notes that the record reflects discovery undertaken by the Plaintiff only as to these cross-claims.

Cf. GNC Franchising, LLC v. Farid, 2007 WL 1437443 (W.D. Pa. May 14, 2007) (granting Plaintiff's Motion for Summary Judgment and noting that defendants' same counsel failed to respond to Motion or to meet Court-ordered deadline).

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party. Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). However, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. It cannot rely on unsupported assertions, conclusory allegations or mere suspicions. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). The nonmoving party may be subject to summary judgment under Rule 56 if, after adequate time for discovery, it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[2]

**V. Analysis**

    **A. Fraudulent Inducement/Negligent Misrepresentation**

Defendants brought this counter-claim as to both (a) information withheld from/misrepresented on GNC's Uniform Franchise Offering Circular ("UFOC") documents, upon which Defendants allegedly relied in deciding to enter into franchise agreements for one or more of their three (3) franchise locations; and (b) profitability and cost information provided by GNC to induce Defendants to expand one franchise to include a "Smoothie Bar".

---

[2] See also Anderson, 477 U.S. at 251-252 (indicating that, distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury").

(1) Defendants initially alleged that they relied on false statements made by GNC in its 1997 UFOC, which UFOC misrepresented that GNC had resolved a franchisee litigation without payment when in fact the litigation was settled by GNC's payment of $325,000. See Plaintiff's Brief in Support of Motion for Summary Judgment at 3 (citing Defendants' Counterclaim at ¶¶ 96-97). Although the falsity of GNC's 1997 UFOC appears clear,[3] Defendants have proffered no evidence that they received or relied upon that document at any time prior to entering into any of their three (3) franchise agreements.[4]  In their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Defendants assert that they may maintain an action for "fraud by omission" as GNC had an obligation to disclose the October, 1996 settlement to Defendants prior to their execution of their second franchise agreement in December, 1996 and their third franchise agreement in May, 1997.  Defendants have not, however, pointed to any document or deposition evidence that they relied upon this alleged fraudulent omission.[5]  Accordingly, Plaintiff is entitled to judgment on this claim.

(2) As to their addition of a Smoothie Bar to one franchise store, Defendants allege that

---

[3] See Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at Exhibit A (attaching State of Maryland's remedial measures related to non-disclosures and UFOC misrepresentations, as investigated by the Attorney General's office).

[4] Plaintiff's evidence suggests that the latest UFOC received by Defendants were a May 1, 1996 UFOC and its November 21, 1996 amendment. See Plaintiff's Brief in Support of its Motion for Summary Judgment at 5.

[5] Plaintiff cites Timothy O'Brien's deposition testimony that the "only" reason he entered into a third franchise was to protect his prior investments/stores when GNC informed him they were going to open another store approximately five (5) miles from Defendants'.  See Plaintiff's Brief in Support of its Motion for Summary Judgment at 7.  To say that one only undertook additional contractual/financial franchise obligations to protect one's business is *not*, of course, to say that one would have undertaken them despite knowledge suggesting abuse/misconduct by the franchisor.  Nor, however, can silence suffice for evidence of reliance in response to a motion for summary judgment.

Plaintiff misrepresented both (a) the performance of then-existing Smoothie Bars (and thus a reasonable profit expectation) and (b) the costs of installation (required by the contract terms to be installed by GNC and paid for by the franchisee).  As a preliminary matter, the Report notes that execution of an Addendum stating that the franchisee was making an independent, informed business decision does not release fraud.

As Plaintiff observes in its Motion for Summary Judgment, however, Defendants have proffered no evidence that the average sales information provided by GNC during the marketing presentation on which Timothy O'Brien testified reliance was, in fact, inconsistent with those stores' Smoothie Bar experiences or otherwise falsely/negligently misleading.  See Plaintiff's Brief in Support of its Motion for Summary Judgment at 9-10 & n.1 (noting absence of evidence that the average store sales information provided was false or that Defendant's store did not meet those averages).  The record before this Court reflects no discovery by Defendants on this matter.            Similarly, although GNC does not dispute that the $56,000 costs incurred by Defendants in relation to their store expansion and incorporation of a Smoothie Bar exceeded its represented costs for a Smoothie Bar installation in an existing store, GNC counters that Defendants' cost reflected their election to simultaneously expand their retail space by 980 square feet (only 150 of which was for the Smoothie Bar).  See Plaintiff's Brief in Support of its Motion for Summary Judgment at 4, 11-12 (citing Defendants' Counterclaim at ¶¶ 100-103, GNC Facts at ¶¶ 54-59).  Defendants, while continuing to assert that their costs exceeded projections, proffer no evidence addressing the portion of expense attributable to their decision to lease additional rental space available adjacent to their franchise, to expand their inventory in response to high sales.  Again, the record before this Court reflects no discovery/documentation

7

by Defendants on this matter. Plaintiff is entitled to judgment on this claim.

### B. Breach of the Covenant of Good Faith and Fair Dealing

On Plaintiff's Motion to Dismiss, the Court concluded that, where a breach of contract claim would proceed, it should not determine in advance of necessity the "complicated and novel question of whether Pennsylvania law would recognize an independent cause of action by a franchisee against a franchisor for breach of the covenant of good faith and fair dealing." See June 1, 2006 Report and Recommendation at 19-26 (citing Restatement (Second) of Contracts, § 205, which expressly provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and in its enforcement"); id. (discussing Atlantic Richfield Co. v. Razumic, 390 A.2d 736, 740-41 (Pa. 1978); Witmer v. Exxon Corp., 434 A.2d 1222 (Pa. 1981)).[6]

Plaintiff asserts entitlement to summary judgment on this claim, despite Defendants' "complain[ts] about GNC's competition store program", because GNC was contractually entitled to operate the two "competition stores" at issue. See Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 13-15 (citing to Franchise Agreement provisions defining Defendants' "protected" territories, and noting that the competition stores were located outside those zones). Plaintiff's contractual right to operate stores outside the protected territories does not, however, equate to a blanket "right to engage in the conduct of which Defendants complain". To the contrary, Defendants have testified that GNC's unfair practices in its

---

[6] As discussed in the previous Report and Recommendation, an explanation for the apparent discrepancies in Pennsylvania and interpretive Third Circuit law on this matter may lie in the distinction between (a) use of a general duty of good faith as an interpretive tool to determine the parties' justifiable expectations, and (b) breach of a duty of good faith and fair dealing under § 205 as giving rise to an independent cause of action. See, *e.g.*, Northview Motors, Inc. v. Chrysler Motors Corporation. 227 F.3d 78, 91 (3d Cir. 2000).

operation of those stores had a significant adverse effect on Defendants' business. See, *e.g.*, O'Brien First Deposition Transcript at 17-31 (explaining that, from 1998 through 2003, Defendants' sales were "devastated" because its competitors were selling at or below Defendants' combined product costs (wholesale price plus royalty and advertising obligations to GNC)); id. (further explaining that the two GNC competition stores in the vicinity of Defendants' franchises matched or even undersold the competitors' pricing); id. at 31-33 (attesting that Defendant was "losing more customers to the GNC competition store than [to non-GNC competitors]"); id. (asserting knowledge of this fact by accounts of customers, store personnel, and personal observation). See also O'Brien Third Deposition Transcript at 26-27; Defendants' Answer and Counterclaim at ¶¶ 78, 81, 109 (alleging with exhibits, and incorporating into Count III for breach of duty of good faith, that during 2004-2005 GNC continued to retail items in its corporate stores at prices lower than its franchisees' cost). Cf. *supra* at 1-2 (noting other litigation raising issues of unfair competition with franchisees).

### C. Breach of Contract

Plaintiff may be held liable for breach of contract on the same factual basis as set forth above, *i.e.*, it may be held liable for breaching Defendants' *justifiable expectations* with regard to its contract performance. See *supra* n. 6; Defendants' Answer and Counterclaim at ¶ 121 (alleging, in claim for breach of contract, that Plaintiff breached its franchise agreements by failing to act in good faith with regard to its contractual dealings). Defendants need not, therefore, identify an express contact provision which Plaintiff is alleged to have violated. Compare Plaintiff's Brief in Support of its Motion for Summary Judgment at 17 ("The failure of Defendants to identify any contractual provision which GNC breached is fatal to their breach of

contract claim.").

### D. January, 2002 Smoothie Bar Release

Plaintiff asserts that Defendants' claims are also barred by a release executed on January 9, 2002, in connection with the addition of a Smoothie Bar. The broad, general release language contained in a paragraph of the Smoothie Bar Addendum to the 1995 Franchise Agreement releases GNC from any liability with respect to known or unknown claims arising from dealings prior to that date. See Plaintiff's Brief in Support of Motion for Summary Judgment at 18.[7] The Report notes the broad nature and timing of this general release required of a franchisee which apparently was not party to the October, 2001 class action settlement agreement. It further notes, however, that Defendants do not challenge the validity or enforceability of the release as to their claims of breach of good faith or breach of contract. Accordingly, Plaintiff is entitled to summary judgment as to such of these remaining counter-claims accruing prior to Janaury 9, 2002. See Plaintiff's Memorandum in Support of its Motion for Summary Judgment at 19 (asserting same).[8]

## VI. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for

---

[7] See also Exhibit 10, Smoothie Bar Addendum (providing that the Franchisee, *i.e.*, Defendant Biscayne Nutritional Services, Inc., released and discharged GNC from "any and all claims, demands, causes of action, losses and damages, known and unknown, at law or in equity or otherwise, arising out of or pertaining to Franchisee's GNC Franchise Agreement . . ., the franchise relationship . . ., and any relationship or dealings between the Franchisee and Franchisor prior to the date of [the Addendum]").

[8] Cf. Lee v. GNC Franchising, Inc., 2003 WL 21697929 (9th Cir. July 22, 2003) (concluding that GNC general release was not so unconscionable as to be unenforceable).

Summary Judgment be granted in part and denied in part as set forth above.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

LISA PUPO LENIHAN
United States Magistrate Judge

Dated: May 31, 2007

cc: The Honorable Gary L. Lancaster
United States District Judge

All Counsel of Record